[No. G042127. Fourth Dist., Div. Three. June 14, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MELANIE MARIE BENNER, Defendant and Appellant.

## COUNSEL

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Angela M. Borzachillo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, Acting P. J.**—Appellant Melanie Marie Benner was convicted of driving under the influence of methamphetamine, as well as being under the influence of, and possessing, that drug. She contends there is insufficient evidence to support her driving conviction and the court committed several errors in sentencing her to probation. We agree appellant's sentence must be modified in some respects, but otherwise affirm the judgment.

### FACTS

One night, Costa Mesa Police Officer Brian Hernandez saw appellant driving a pickup truck with expired registration tags. He activated his overhead lights to initiate a traffic stop, but instead of pulling over to the curb, appellant got into the left lane and turned into the parking lot of a fast-food restaurant. She then tossed a small, paper bindle out her window before coming to a stop.

Hernandez pulled up behind her and retrieved the bindle, which contained 100 milligrams of methamphetamine. He had appellant step out of her vehicle, handcuffed her, and placed her in his patrol car. Appellant was agitated, fidgety and very talkative. She was also sweating profusely, even though the patrol car was air-conditioned. When drug recognition expert Allen Rieckhof arrived on the scene, he noticed appellant's tongue had a white film and blisters on it, and her breath had a chemical odor, which suggested she had been smoking methamphetamine. A subsequent blood test confirmed she had methamphetamine in her system.

Rieckhof transported appellant to the police station and gave her a series of sobriety tests. Even before the tests began, appellant was swaying and unsteady on her feet. During the "walk and turn" test, she lost her balance, stepped out of line and stopped walking. During the "one leg stand" test, she

swayed and failed to follow Rieckhof's instructions. And during the "Rhomberg" test, she did pretty well estimating time, but her fingers twitched and her eyelids fluttered. Rieckhof also noticed appellant's pupils were constricted and did not track smoothly. In addition, her pulse was about twice the normal rate.

After the testing, Officer Hernandez transported appellant to the Orange County jail. On the ride there, appellant was "agitated, paranoid [and just] kept on talking." She accused Hernandez of following her all day and suspected his ride-along was really an undercover narcotics agent.

Based on all the circumstances, Rieckhof believed appellant was under the influence of methamphetamine. He testified methamphetamine is a stimulant that can cause emotional instability and mood swings. It also tends to make users very alert, jumpy and jittery. And, as evidenced in this case, it can cause various physiological effects, such as a rapid pulse and finger twitching. Rieckhof admitted that not all methamphetamine users are affected similarly and that some can function tolerably when they are under the influence. However, it has been Rieckhof's experience that people who are under the influence of methamphetamine are generally "unable to function properly given tasks." He said field sobriety tests are designed to determine the degree to which a person suspected of drug use is impaired. Like driving, the tests involve "divided attention tasks," which require the person to do more than one thing at a time. However, the tests are more controlled than driving a car, because they do not require the participant to react to the types of changing conditions and circumstances drivers are expected to deal with.

I

Appellant contends there is insufficient evidence to support her conviction for driving under the influence of a controlled substance, i.e., methamphetamine. We disagree.

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation. ]" (*People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) A reversal "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

■ Under Vehicle Code section 23152, subdivision (a), it is unlawful for any person who is under the influence of any alcoholic beverage or drug to drive a vehicle. For purposes of this section, the term "drug" means any substance, other than alcohol, "which could so affect the nervous system, brain, or muscles of a person as to impair, to an appreciable degree, his ability to drive a vehicle in the manner that an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would drive a similar vehicle under like conditions." (Veh. Code, § 312; see also *People v. Canty* (2004) 32 Cal.4th 1266, 1278 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

■ Appellant asserts there is no evidence methamphetamine could so affect a person. However, drug recognition expert Rieckhof testified methamphetamine tends to make people jittery, anxious and emotionally erratic. He said users are prone to mood swings and are generally unable to perform tasks they are given. While decreased agility and concentration does not result in all cases, the drug tends to make it harder for people to perform "divided attention tasks," i.e., those tasks that require a person to do more than one thing at a time. Rieckhof put driving in that category, explaining that drivers must not only be able to operate a motor vehicle, but also react to "whatever comes [their] way, be it a red light [or] be it a kid [who] steps off the sidewalk into [their] path." Methamphetamine's tendency to impair a person's ability to do these things is precisely what makes its use by drivers so dangerous.

Considering all the evidence, the jury could reasonably conclude methamphetamine is a drug that *could* impair a person's ability to drive a vehicle in a reasonably prudent manner. As such, it qualifies as a drug for purposes of Vehicle Code section 23152, subdivision (a).

■ Appellant also contends there is insufficient evidence to support the jury's finding her ability to drive was actually impaired to an appreciable degree. However, upon being taken into custody, appellant was anxious, agitated and paranoid, which suggests she was not in the best state of mind to be driving a car. She also swayed and was unsteady on her feet, which suggests she was physically impaired, as well. And that was *before* she began her sobriety tests. Once the tests began, appellant continued to have problems keeping her balance, and she also had trouble following Rieckhof's directives. Needless to say, having a proper sense of balance and being able to follow rules are important aspects of safe driving. Thus, from a physical, emotional and cognitive standpoint, the evidence readily suggests appellant's driving ability was appreciably impaired, as compared to an ordinarily prudent and cautious driver in full possession of her faculties.

In arguing otherwise, appellant relies on *People v. Torres* (2009) 173 Cal.App.4th 977 [93 Cal.Rptr.3d 303]. In that case, there was substantial evidence the defendant drove under the influence of methamphetamine, but after he was arrested, he was not subjected to "any field sobriety tests or other tests to measure [his] balance, coordination, concentration, or divided attention." (*Id.* at p. 981.) Under those circumstances, there was insufficient evidence to support a finding that his methamphetamine use actually impaired his driving ability. (*Id.* at p. 983.)

Here, in contrast, Rieckhof testified at length as to how appellant was unable to perform many of the tasks involved in the sobriety tests she was given. Her testing performance revealed glaring deficits in balance, coordination and concentration. And that did not bode well for her driving ability. Speaking to the relationship between taking a sobriety test and driving, Rieckhof suggested driving was actually the more difficult task because you have less control of your surroundings when you are behind the wheel of a car. Suffice it to say, the evidence of driving impairment in this case was much greater than it was in *Torres*.

Still, appellant contends her conviction must be overturned because there was no evidence on "absorption rates" to show how quickly methamphetamine works its way into a user's system. She speculates that while she may have been impaired when Rieckhof tested her at the station, about 90 minutes after the stop, there is no way to know if she was impaired *at the time she was driving*. However, she displayed signs of being under the influence of methamphetamine from the outset of the stop. And as Rieckhof explained, some of her symptoms, such as the white film and blisters on her tongue and the chemical odor of her breath, were consistent with her having smoked methamphetamine. Rieckhof said, compared to other methods of ingestion, such as snorting or injecting, smoking is "the fastest way [to] get methamphetamine in your system." He also said the effects of smoking the drug usually last for several hours.

Based on all the evidence that was presented, the jury could reasonably conclude appellant's driving ability was appreciably impaired by methamphetamine at the time she was driving her vehicle. We therefore reject her challenge to the sufficiency of the evidence to support her conviction for driving under the influence of methamphetamine.

## II

At sentencing, the trial court placed appellant on probation subject to various terms and conditions. We agree with the parties that some aspects of her sentence are flawed and must be corrected.

■ First, it is undisputed the trial court erred by conditioning appellant's probation on the payment of certain fees and costs. (*People v. Flores* (2008) 169 Cal.App.4th 568, 578 [86 Cal.Rptr.3d 804]; *People v. Hart* (1998) 65 Cal.App.4th 902, 907 [76 Cal.Rptr.2d 837]; *People v. Bennett* (1987) 196 Cal.App.3d 1054, 1056–1057 [242 Cal.Rptr. 380].) However, the appropriate remedy is not to strike the fees and costs altogether, but, as appellant admits, to simply order their payment as part of the judgment in the case. (*Flores, supra*, at p. 578; *Hart, supra*, at p. 907; *Bennett, supra*, at pp. 1056–1057.) We will modify the judgment accordingly.

■ A modification is also in order to delete the $100 alcohol and drug assessment fee the court imposed. As the Attorney General concedes, that fee was improper because it can only be levied upon a fine, penalty or forfeiture that was imposed *and collected* by the court. (Veh. Code, § 23649.) Here, the court did impose a fine against appellant, but it ended up subsuming the fine into appellant's presentence credit award. Because the fine was never *collected*, the $100 assessment fee must be stricken. (*Ibid.*)

Appellant also challenges her $50 alcohol abuse education fee. She correctly notes the fee was not authorized under Penal Code section 1463.25, the statute cited in the court's minute order. However, the fee was authorized under Vehicle Code section 23645, which states that "any person convicted of a violation of Section 23152 or 23153 shall, in addition to any other fine, assessment, or imprisonment imposed pursuant to law, pay an alcohol abuse education and prevention penalty assessment in an amount not to exceed fifty dollars . . . ." (Veh. Code, § 23645, subd. (a).) In light of this provision, and the court's clear intent to impose an alcohol abuse education fee, we will uphold the fee and modify the minute order to reflect the correct statute under which it was authorized.

■ Lastly, appellant notes that while the minute order and probation order reflect the imposition of a $25 administrative screening fee, the court never actually imposed this fee. Nevertheless, the fee is mandatory, when, as here, the defendant is released on her own recognizance. (Pen. Code, § 1463.07.) Appellant requests that we remand the matter so the trial court can assess whether she has the ability to pay the fee, but there was never any issue as to whether she had the means to pay any of the other fees and costs the court ordered her to pay. And since we are knocking $100 off her overall fee total, we think it reasonable to assume she has the means to pay the full $25. We will therefore modify the judgment to include the fine. (See *People v. Smith* (2001) 24 Cal.4th 849 [102 Cal.Rptr.2d 731, 14 P.3d 942] [appellate court may correct judgment to impose a fee or penalty that is mandatory].)

## DISPOSITION

The order requiring appellant to pay certain fines and costs as a condition of probation is modified to delete the condition. However, except for the $100 alcohol and drug assessment fee, which is stricken, the fines and costs themselves are affirmed as separate orders.

The judgment is also modified to reflect that appellant's $50 alcohol abuse education fee is authorized under Vehicle Code section 23645, subdivision (a), and that appellant must pay a $25 administrative screening fee pursuant to Penal Code section 1463.07.

In all other respects, the judgment is affirmed.

Aronson, J., and Ikola, J., concurred.

A petition for a rehearing was denied July 8, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 29, 2010, S184512.