Filed 8/9/16  P. v. Castillo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL GARCIA CASTILLO,<br><br>    Defendant and Appellant. | 2d Crim. No. B263820<br>(Super. Ct. No. 1448623)<br>(Santa Barbara County) |

Daniel Garcia Castillo appeals judgment after conviction by jury of two counts of gross vehicular manslaughter while intoxicated, with injury to more than one victim (Pen. Code, § 191.5, subd. (a); Veh. Code,[1] § 23558); one count of driving under the influence of a drug causing injury, with personal infliction of great bodily injury and injury to more than one victim (§§ 23153, subd. (e), 23558; Pen. Code, § 12022.7, subd. (a)); and one count of reckless driving with an enumerated injury (§ 23105).  The trial court sentenced Castillo to 10 years 8 months in prison, a significant portion of which is attributable to the jury's findings that he was under the influence of methamphetamine and acted with gross negligence.  He contends there is no substantial evidence to support those findings and all but the reckless driving conviction should be reversed.  We affirm.

---

[1] All statutory references are to the Vehicle Code unless otherwise stated.

BACKGROUND

Castillo drove a forklift home from work in reverse at maximum speed. A witness saw him turn from Stowell Road onto Philbric Road at an "unsafe speed," "going pretty erratic," "[s]werving," and "crossing over" Philbric's "center divider." The witness "debat[ed] whether [to] call the police."

The Pozos family was traveling north on Philbric, within the speed limit and within their lane. Castillo saw their car coming but crossed over the double line, still in reverse, and accelerated left across their path. His 12,000 pound forklift hit their 3,000 pound car, killing two family members and injuring two others.

A blood test established that Castillo had 110 nanograms per milliliter of methamphetamine in his system. Prosecution and defense experts disagreed whether it impaired his ability to drive. They agreed that, unlike alcohol levels, the level of methamphetamine in a person's blood does not correlate to a particular level of impairment. The effects vary with the method of ingestion and the individual's tolerance. They agreed methamphetamine can remain in the blood stream after its effects wear off.

A California Highway Patrol (CHP) officer arrived about 10 minutes after the collision, and saw Castillo pacing, drinking from a water bottle, and smoking heavily. Castillo's hands were shaking and he touched his face repeatedly. His eyes were red and watery, but he was not crying.

Castillo told the officer he smoked marijuana one week earlier, used methamphetamine the day before, and drank a beer and took a Vicodin that morning. His blood alcohol level was below the legal limit.

Two hours after the collision, a drug recognition evaluator examined Castillo. He concluded Castillo was too impaired to drive based on Castillo's statements, his vital signs, other symptoms, and his performance on field sobriety tests. He believed Castillo was under the influence of a central nervous system stimulant (such as methamphetamine), a narcotic analgesic (Vicodin), and cannabis. Lab results later showed there were no detectable levels of narcotic analgesics or cannabis in his system.

2

The People's expert opined that Castillo was under the influence of methamphetamine and was too impaired to drive safely. She testified that driving under the influence of methamphetamine is characterized by high speed, out of control lane positioning, poor judgment, and poor estimation of space, resulting in high-speed collisions and "problems making left-hand turns against traffic."

A CHP officer testified that Castillo violated the Vehicle Code by traveling on the wrong side of the road (§ 21460), unsafely backing (§ 22106), and making an unsafe left turn with a vehicle approaching (§ 21801).

An expert testified the forklift should not have been driven on a public road. It was designed to be towed, with its forks folded up. Having the forks down causes a forklift to sway. Castillo's forklift had long homemade forks slipped over the original forks, increasing its weight and instability. A forklift's light steering radius makes it difficult to control at higher speeds, and driving it backwards makes it even more difficult to control. The tires of Castillo's forklift were unevenly inflated, below the recommended level, making it more unstable.

Friction marks showed that the forklift traveled south in the Pozos' northbound lane, out of control, before the collision. Less than half a second passed from the moment the forklift crossed into the Pozos' lane before it hit the car. This was not sufficient time for the car's driver to even perceive the lane change.

Castillo testified he intended to turn safely without hurting anyone. He said the Pozos' car crossed into his lane. But he also said he saw it coming and accelerated into the turn. He said he did not use methamphetamine on the day of the collision and did not feel intoxicated. He said he used methamphetamine only once in his life, the day before the collision at about 10:00 a.m. He found it and knew what it was "from T.V." He was tired, and used it to motivate himself because he "needed to get stuff done around the ranch."

A defense witness testified he saw the forklift driving "normal" just before the accident. It was traveling in reverse about 30 miles per hour, but slowed and pulled over to the edge to let cars pass. Under cross-examination, the witness said the forklift

3

was not driven safely. It was going "extremely" fast between cars, and the driver was not in complete control. It slowed to let cars pass, but lost control when it accelerated. The forklift caught the witness's attention because it was traveling in reverse and the speed made the engine loud.

An emergency room physician testified for the defense that he did not find that Castillo was impaired when he cleared him for booking three and a half hours after the collision. Castillo's blood pressure and pulse were high. He was aware, alert, oriented, and cooperative. Castillo seemed unusually calm for the circumstances.

A defense expert testified he could not find to a reasonable scientific certainty that the methamphetamine in Castillo's system would impair his driving. The expert said many of Castillo's symptoms were inconsistent with being under the influence of methamphetamine. He also described infirmities in drug recognition evaluation protocols.

## DISCUSSION

### *Under the Influence*

Castillo contends his convictions for gross vehicular manslaughter while intoxicated and driving under the influence must be reversed because there is insufficient evidence that methamphetamine impaired his ability to operate the forklift safely. We disagree.

We review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Maciel* (2013) 57 Cal.4th 482, 514-515.) We must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, presuming the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. (*Id.* at p. 515.)

Proof that Castillo was "under the influence" of a drug was necessary to his convictions for gross vehicular manslaughter, and to his conviction for driving under the

4

influence causing injury.  (Pen. Code, § 191.5, subd. (a); § 23153, subd. (e).)  A defendant is "under the influence" if the drugs have so far affected his nervous system, brain, or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties.  (*People v. Canty* (2004) 32 Cal.4th 1266, 1278.)  The jury was so instructed.  "Whether [a] defendant was 'under the influence' [i]s a question of fact for the jury to determine from all the proven circumstances of the case."  (*People v. Bui* (2001) 86 Cal.App.4th 1187, 1194.)

Methamphetamine's tendency to impair a person's ability to perform divided attention tasks makes its use by drivers dangerous.  (*People v. Benner* (2010) 185 Cal.App.4th 791, 795.)  But each case requires proof that the defendant's ability to drive was actually impaired.  (*People v. Enriquez* (1996) 42 Cal.App.4th 661, 666.)  In *People v. Torres* (2009) 173 Cal.App.4th 977, 983, for example, the mere presence of methamphetamine in the defendant's blood stream was insufficient to prove that his ability to drive was impaired where he drove normally and no sobriety tests were conducted.  (*Id.* at pp. 981-982.)

But this case is more like *People v. Benner*, *supra*, 185 Cal.App.4th 791, 796, in which the defendant's poor performance on tests for balance, coordination, and concentration provided sufficient evidence to prove that the methamphetamine in her system impaired her ability to drive.  The drug recognition evaluator testified that Castillo had difficulty following instructions, lost his balance, and missed his nose with his finger three times.   His nasal area was red and irritated.  His blood pressure was 156 over 96, compared to a normal range of 120 to 140 over 70 to 90.  His pulse ranged from 112 to 116 beats per minute, compared to a normal range of 60 to 90 beats per minute.  He overestimated the passage of time.  His mouth was dry.  His pupils reacted slowly to direct light.  The jury was free to reject an innocent but unreasonable interpretation of these symptoms.  (CALCRIM No. 224.)

The drug recognition evaluator and the People's expert testified that Castillo's symptoms were consistent with methamphetamine intoxication.  They

acknowledged he had some symptoms that are not consistent with methamphetamine use (slow and slurred speech, bloodshot and watery eyes, normal muscle tone, and normally tracking and converging eyes), but concluded based on all the evidence that he was under the influence of methamphetamine and too impaired to drive safely. Castillo's expert acknowledged that overestimation of passage of time is consistent with being under the influence of methamphetamine, and that driving under the influence of methamphetamine is characterized by risky, aggressive, and dangerous driving.

Castillo's lack of coordination and inability to follow instructions, among other things, constitutes substantial evidence of the effect methamphetamine had on his nervous system and brain. (*People v. Benner*, *supra*, 185 Cal.App.4th at p. 796.)

*Gross Negligence*

Castillo argues there is no substantial evidence that he acted with gross negligence. We disagree.

Proof that Castillo acted with "gross negligence" was necessary to his convictions for gross vehicular manslaughter. (Pen. Code, § 191.5, subd. (a).) "Gross negligence" is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204 (*Ochoa*).) Conscious indifference is an "I don't care attitude." (*Id.* at p. 1208.) Proof of intoxication and traffic violations are relevant, but are not alone sufficient to prove gross negligence. (*Id.* at p. 1207; *People v. Bennett* (1991) 54 Cal.3d 1032, 1034-1035, 1040.) Rather, the jury must consider all relevant circumstances to determine if the defendant acted with a conscious disregard of the consequences, including "the manner in which the defendant operated his vehicle, the level of his intoxication, and any other relevant aspects of his conduct." (*Ochoa*, at pp. 1205, 1207; *People v. Andersen* (1994) 26 Cal.App.4th 1241, 1253 [gross negligence finding sustained where defendant used dirt shoulder to pass a big rig at high speed while under the influence of methamphetamine].) The test is objective: Whether a reasonable person in the defendant's position would have been aware of the risks. (*Ochoa*, at p. 1205.) The jury was so instructed.

6

The record contains substantial evidence that a reasonable person in Castillo's position would have been aware of the risks presented by his conduct. Castillo drove the forklift at an unsafe speed in reverse, swerving and out of control, on the wrong side of a double yellow line, and drove directly into the path of oncoming traffic even after seeing the rapidly approaching car.

Castillo's own testimony demonstrated his recklessness. He testified he drove the forklift home because he did not own a flatbed truck. He knew the tire pressure was off, but he did not fix it because the "shop" door was locked. He drove the forklift as fast as it could go, and the clutch kept "slipping." Castillo testified he saw the car coming before he crossed the double yellow line into its lane. He said he moved one tire width over the line and stuck his hand out to indicate he was turning left, and then accelerated into the turn, although the car was "coming pretty fast."

As a certified forklift driver with safety training, Castillo should have understood the risks. He acted with complete disregard for the danger he created to the lives of others. The jury could reasonably conclude he displayed a conscious indifference to the consequences of his actions.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

7

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.