Filed 9/24/19

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B291307 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA072856) |
| v. | |
| DARRICK DEMOND HICKS, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Los Angeles Superior Court, Shannon Knight, Judge. Affirmed.

Law Office of John J. Uribe and John J. Uribe for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie C. Brenan,

---

**\*** Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

Supervising Deputy Attorney General, and Toni R. Johns Estaville, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Earlier this year, one of our sister courts in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) held that due process precludes a court from "impos[ing]" certain assessments and fines when sentencing a criminal defendant absent a finding that the defendant has a "present ability to pay" them. (*Id.* at pp. 1164, 1167.) As explained below, we disagree with *Dueñas*'s analysis, consequently conclude that *Dueñas* was wrongly decided, and accordingly reject the *Dueñas*-based challenge presented in this appeal. In the unpublished portion of this opinion, we also affirm the underlying convictions.

**FACTS AND PROCEDURAL BACKGROUND**

**I. Facts**

On a Sunday afternoon in mid-November 2017, Los Angeles Sheriff's Deputies Christopher Morris (Deputy Morris) and Bryan Wiggins (Deputy Wiggins) responded to a call from a second-floor apartment in Palmdale, California. The caller had reported that his ex-boyfriend refused to leave and had fallen asleep on his sofa.

When they arrived, Deputies Morris and Wiggins found Darrick Demond Hicks (defendant) asleep on the sofa. Deputy Wiggins roused defendant by nudging his leg and calling his name. Defendant sat up and repeatedly asked why the deputies were in the apartment. Deputy Wiggins explained that defendant's ex-boyfriend had called 911 and that defendant needed to leave.

As Deputy Wiggins spoke with defendant, he noticed that defendant was speaking rapidly, sweating profusely, and

2

involuntarily clenching his jaw.  Because these symptoms are consistent with being under the influence of a stimulant, Deputy Wiggins asked defendant if he would participate in field sobriety tests; defendant agreed.  Deputy Wiggins performed two such tests, each of which yielded a result consistent with being under the influence of a stimulant:  Defendant's resting pulse was 132 beats per minute (where normal is 60 to 90 beats per minute), and his pupils were dilated.  Based on the totality of defendant's symptoms and the test results, Deputy Wiggins determined that defendant was under the influence of a controlled substance.  He informed defendant of his conclusion, told him he was going to place him under arrest, and asked defendant to stand and put his hands behind his back.  Defendant complied with Deputy Wiggins's order and was placed in handcuffs.

Deputy Wiggins and Deputy Morris then began to escort defendant out of the apartment, each gripping one of defendant's forearms lightly.  After several steps, defendant stopped walking forward, planted his feet, tensed up his body, and started pushing his torso backwards and to the side.  Each deputy sensed that defendant was preparing either to throw his head back (possibly to head-butt one of the deputies) or to break free from their grasp (possibly to throw an elbow at one of the deputies).

To prevent any melee before it started, the deputies used their body weight to place defendant face down onto the nearby sofa, although they immediately turned defendant onto his side so he could breathe.  While on the sofa, defendant—all the while screaming—tried to lift his torso, squirmed from side to side, and repeatedly kicked his legs upward towards his buttocks.  One of defendant's kicks struck Deputy Morris in the arm.  It took both deputies to keep defendant prone on the sofa.  Defendant ignored

the deputies' repeated orders to "calm down" and "stop moving around."

After one of the deputies called for backup, additional officers arrived and a third officer, Officer Larry Terrell, had to avoid defendant's kicks to place a nylon strap around defendant's legs to bind them together. When defendant continued kicking his bound legs, the deputies attached the leg strap to his handcuffs. With the assistance of fire fighters, defendant was then lashed to a soft restraint chair and slid on a track down the stairs to the first floor. The back-up officers videotaped defendant's continued resistance.

A paramedic who arrived with the fire fighters also observed that defendant had symptoms consistent with being under the influence of a stimulant.

## II.  Procedural Background

The People charged defendant with three counts of resisting an executive officer (Pen. Code, § 69),[1] one for Deputy Wiggins, one for Deputy Morris,[2] and one for Deputy Terrell, and a single misdemeanor count of being under the influence of a controlled substance (Health & Saf. Code, § 11550).

A jury convicted defendant of all counts.

In July 2018, the trial court sentenced defendant to three years of formal probation for the three felony resisting counts. The court ordered defendant to pay a $40 court assessment

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Deputy Morris was substituted for the deputy originally named in the operative information.

4

(§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $150 drug program fee (Health & Saf. Code, § 11372.7), and a restitution fine of $300 (§ 1202.4). One of defendant's conditions of probation is to "obey all . . . orders of the court," which includes paying all assessments, fines and fees. Defendant did not object to the imposition of the assessments, fee and fine, or to their payment as a condition of probation. For the misdemeanor, the court imposed a time-served jail sentence.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that (1) none of his convictions is supported by sufficient evidence, and (2) the trial court's imposition of the assessments, fee and fine violate due process under *Dueñas*, *supra*, 30 Cal.App.5th 1157.

## I. Sufficiency of the Evidence Challenge

In assessing the sufficiency of the evidence underlying a conviction, we "'"review the whole record in the light most favorable to the [verdict] to determine whether it discloses . . . evidence that is reasonable, credible, and of solid value . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*People v. Salazar* (2016) 63 Cal.4th 214, 242.)

### A. *Resisting an executive officer counts*

As our Supreme Court has observed, a defendant may commit the crime of resisting an executive officer in one of two ways: (1) by "attempt[ing], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law," or (2) by "knowingly resist[ing], by the use of force or violence, the officer, in the performance of his or her duty." (§ 69; *In re Manuel G.* (1997) 16 Cal.4th 805,

5

814.) Where, as here, a defendant is charged with the second variant of this crime, the People must prove that (1) the defendant "'resist[ed] the officer "by the use of force or violence,"'" (2) the defendant knew "'that the person [he was] resist[ing] [was] an executive officer and that the officer [was] engaged in the performance of his/her duty,'" and (3) the officer "'was,'" in fact, "'acting lawfully at the time.'" (*People v. Atkins* (2019) 31 Cal.App.5th 963, 973; *In re A.L.* (2019) 38 Cal.App.5th 15, 21.)

Substantial evidence supports the jury's findings that defendant knowingly resisted Deputies Morris, Wiggins and Terrell by use of force or violence. The record contained evidence that defendant resisted all three officers by the use of force or violence when, among other things, he flailed about and kicked his legs while on the sofa and while disobeying the officers' repeated orders to calm down and stop moving. (Accord, *People v. Carrasaco* (2008) 163 Cal.App.4th 978, 985-986 [defendant refused to comply with officers' orders to stop resisting, and instead flailing about, yelled and kicked; substantial evidence of resistance].) The record also contained evidence that defendant knew he was resisting Sheriff's deputies, as they were wearing uniforms and told him they were there because defendant's ex-boyfriend had called for their assistance. And the record contained evidence that the officers were lawfully responding to a 911 call as part of their duties.

Defendant offers three counter-arguments. First, he argues that he did not "form[] the intent necessary" to violate section 69 because he initially complied with Deputy Wiggins's request to participate in field sobriety tests and to stand up and be cuffed. This argument ignores that the only intent requirement for the second variant of section 69 is a general

6

intent requirement—namely, that a defendant has "knowledge of the [pertinent] facts." (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1419-1421.) And even if a further showing of intent *were* required, we reject defendant's suggestion that any modicum of cooperation by a defendant somehow immunizes him from prosecution for any and all subsequent resistance.

Second, defendant asserts that his conduct on the sofa does not constitute resisting an executive officer because he was merely engaged in "helpless flailing" prompted by an inability to breathe and was not specifically intending to kick "any particular deputy," such that he was "not intending with violence or force to resist the deputies." This assertion is without merit actually (because the officers immediately turned defendant onto his side to allow him to breathe) and without merit legally (because the "forceful resistance of an officer by itself gives rise to a violation of section 69, without proof force was directed toward or used on any officer" (*People v. Bernal* (2013) 222 Cal.App.4th 512, 520; *People v. Martin* (2005) 133 Cal.App.4th 776, 782)).

Lastly, defendant contends that this is not a "typical" section 69 case and, in support, cites several cases where the defendants' resistance was accompanied by threats of violence or the actual infliction of harm. He also cites *People v. Rodriguez* (2018) 26 Cal.App.5th 890 (*Rodriguez*) for the proposition that a section 69 conviction must be supported by "a finding of deliberately aggressive behavior." (*Id.* at p. 912.) Where the facts of defendant's resistance fall on a hypothetical bell curve of resistance is irrelevant; what matters to a sufficiency of the evidence challenge is whether those facts meet the minimum threshold for a constitutionally valid conviction. Here, they do. And the excerpt from *Rodriguez* cited by defendant noted that a

"finding of deliberately aggressive behavior . . . *could* satisfy the[] elements" of section 69 (*ibid.*, italics added); *Rodriguez* did not hold that such behavior was an absolute prerequisite to conviction.

**B.    *Controlled substance conviction***

As its name suggests, the crime of being under the influence of a controlled substance requires proof of "being in that state in any detectable manner," including by manifesting symptoms of drug use.  (Health & Saf. Code, § 11550, subd. (a); *People v. Canty* (2004) 32 Cal.4th 1266, 1278 (*Canty*).)  Substantial evidence supports the jury's verdict that defendant was under the influence—both Deputy Wiggins and a responding paramedic concluded, based on their training and experience, that defendant was under the influence of a stimulant due to his dilated pupils, his abnormally high pulse rate, his profuse sweating, his jaw clenching, and his inability to remain still.

Defendant offers three reasons why this evidence was not enough.  First, he contends that the People never proved that he was under the influence of methamphetamine, specifically.  We disagree, as the record contains substantial evidence (1) that, as detailed above, defendant was under the influence of a central nervous system stimulant and (2) that methamphetamine is just such a stimulant.  Second, and relatedly, he suggests that he cannot stand convicted of this crime unless the People submit some sort of chemical test (blood, urine or breath) confirming his ingestion of a controlled substance.  This is simply not the law.  The cases defendant cites—*Ramirez v. City of Buena Park* (9th Cir. 2009) 560 F.3d 1012, 1021-1024 (*Ramirez*), and *Way v. County of Ventura* (9th Cir. 2006) 445 F.3d 1157, 1158 (*Way*)— are not to the contrary, as *Ramirez* upheld a finding of probable

8

cause to detain and then arrest a suspect for being under the influence of a controlled substance based on drug-use symptoms alone and *Way* evaluated the constitutionality of a blanket policy allowing for strip searches of persons arrested on drug charges. Third, defendant cites cases overturning convictions for driving under the influence when based solely on the presence of symptoms of drug use. (E.g., *People v. Torres* (2009) 173 Cal.App.4th 977, 983.) But these cases are irrelevant, as our Supreme Court has explicitly noted that the crimes of *being* under the influence of a controlled substance and *driving* under the influence of a controlled substance require different showings—and only the latter requires proof that the symptoms "impair[] . . . physical or mental ability." (*Canty, supra,* 32 Cal.4th at pp. 1278-1279.)

## II. *Dueñas*-Based Challenge

Defendant argues that the trial court violated his due process rights in imposing $70 in assessments, the $300 restitution fine, and the $150 drug program fee without first determining his present ability to pay. As a threshold matter, we must correct the trial court's error in failing to impose the $70 in assessments as to each count. (§ 1465.8, subd. (a) [assessment applies to "every conviction"]; Gov. Code, § 70373, subd. (a) [same]; see also *People v. Smith* (2001) 24 Cal.4th 849, 853 [appellate court may correct error in not imposing mandatory financial obligations].) As corrected, defendant was obligated to pay, as a condition of probation, a total of $730--$280 in assessments, a $300 restitution fine, and a $150 drug program fee. Defendant's challenge requires us to interpret the relevant due process precedent and then to apply our interpretation to undisputed facts. These are tasks we undertake de novo.

9

(*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 416 [constitutional interpretation]; *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384 [undisputed facts to law].)

### A.    *The Dueñas decision*

In January 2019, *Dueñas* held that "due process of law requires [a] trial court to . . . ascertain a defendant's present ability to pay before it *imposes*" (1) "court facilities and court operations assessments" (under section 1465.8 and Government Code section 70373, respectively), or (2) a restitution fine (under section 1202.4).  (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1167, 1172, italics added; see also, *id.* at p. 1172 [restitution fine imposed without an ability to pay hearing must be stayed until such a hearing is conducted].)

To reach its holding, *Dueñas* wove together two distinct strands of due process precedent.

The first strand secures a due process-based right of *access* to the courts.  Starting with *Griffin v. Illinois* (1956) 351 U.S. 12 (*Griffin*), this line of precedent reads due process to require courts to waive court costs and fees that would otherwise preclude criminal and civil litigants from prosecuting or defending lawsuits or from having an appellate court review the propriety of any judgment.  (See *Griffin*, at p. 19 [due process requires state to provide criminal defendants with a free transcript for use on appeal]; *Preston v. Municipal Court of San Francisco* (1961) 188 Cal.App.2d 76, 87-88 [same]; *Mayer v. Chicago* (1971) 404 U.S. 189, 190, 196-198 [same, even when the crime was punishable solely by a fine] (*Mayer*); *M.L.B. v. S.L.J.* (1996) 519 U.S. 102, 107, 127 [same, as to transcripts terminating parental rights]; *Jameson v. Desta* (2018) 5 Cal.5th

594, 599, 605, 623 [due process requires state to waive court report fees for civil litigants for use on appeal] (*Jameson*); see also Gov. Code, § 68630, subd. (a) [articulating California's policy to give "all persons . . . access to the courts" and to "ensure that court fees are not a barrier to court access"]; see also *id.*, § 68631 [creating mechanism for waiver of court fees].)

The second strand erects a due process-based bar to incarceration based on the failure to pay criminal penalties when that failure is due to a criminal defendant's indigence rather than contumaciousness. (*In re Antazo* (1970) 3 Cal.3d 100, 103-104, 113-114 (*Antazo*); *Williams v. Ill.* (1970) 399 U.S. 235, 241 (*Williams*); *Tate v. Short* (1971) 401 U.S. 395, 396-397; *Bearden v. Georgia* (1983) 461 U.S. 660, 661-662 (*Bearden*).)

### B. *Is Dueñas good law?*

*Dueñas* engaged in a bit of constitutional synergy in fashioning what its authoring court acknowledged was a "newly announced constitutional principle" (*People v. Castellano* (2019) 33 Cal.App.5th 485, 489) from two components—that is, the two strands of due process precedent described above—that themselves do not dictate *Dueñas*'s rule.

The first strand does not dictate *Dueñas'*s bar on imposing fees because the imposition of assessments, fines and fees does not deny a criminal defendant access to the courts. (Accord, *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1039 (conc. opn. of Banke, J.) ["the imposition of" assessments and fine "on the defendant in *Dueñas*" is not "an issue of access to our courts or justice system"] (*Gutierrez*); *People v. Santos* (2019) 2019 Cal.App. LEXIS 759, * 22 (dis. opn. of Elia, J.) ["*Dueñas* did not involve fines or fees required to be paid in order to access judicial processes."] (*Santos*).) The cases requiring the removal of

11

financial bars to access are keyed to ensuring that the litigant has a full and fair opportunity to present the *merits* of his or her claims at trial and on appeal. (*Jameson*, *supra*, 5 Cal.5th at p. 608 ["lack of a verbatim record . . . will frequently be fatal to [the] litigant's ability to have his or her claims of trial court error resolved *on the merits* by an appellate court"], italics added; *Mayer*, *supra*, 404 U.S. at p. 198 [denial of record denies "proper consideration of [defendant's] claims"].) In this regard, access is part and parcel of the "opportunity to be heard" that the constitutional right of due process is meant to secure. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) In this case, the imposition of the assessments, fine and fee in no way interfered with defendant's right to present a defense at trial or to challenge the trial court's rulings on appeal; indeed, their imposition came *after* the trial was over and, except for the bare fact of their imposition, is not otherwise challenged on appeal.

The second strand also does not dictate *Dueñas*'s bar on imposing fees because their imposition, without more, does not result in incarceration for nonpayment due to indigence. The cases prohibiting incarceration for indigence alone rest on the notion that "*[f]reedom from imprisonment* . . . lies at the heart of the liberty that [the Due Process] Clause protects." (*Zadvydas v. Davis* (2001) 533 U.S. 678, 690, italics added.) The act of imposing an assessment, fine or fee upon a criminal defendant at the time of sentencing does not mandate instant incarceration and thus does not infringe that very fundamental liberty interest. (Accord, *Santos*, *supra*, 2019 Cal.App. LEXIS at pp. 23-24 (dis. opn. of Elia, J.) ["the statutes at issue . . . in *Dueñas* deprive no

one of [their] fundamental right to liberty based on [their] indigence."].)

Of course, *Dueñas*'s expansion of the boundaries of due process is not in itself problematic. But any such expansion warrants due consideration and reflection. So, we ask: Is *Dueñas*'s expansion of due process in a manner that grants criminal defendants a protection not conferred by either its foundational pillars a correct interpretation?

In our view, it is not. We reach this conclusion for two reasons.

First, *Dueñas* does more than go beyond its foundations; it announces a principle inconsistent with them. Our Supreme Court in *Antazo*, *supra*, 3 Cal.3d 100, expressly declined to "hold that the imposition upon an indigent offender of a fine [or] penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause." (*Id.* at pp. 116, 103-104.) *Antazo* refused to prohibit the imposition of fines and assessments upon indigent defendants for good reason, which the United States Supreme Court explained best: "The State . . . has a fundamental interest in appropriately punishing persons--rich and poor--who violate its criminal laws," such that "[a] defendant's poverty in no way immunizes him from punishment." (*Bearden*, *supra*, 461 U.S. at pp. 669-670.) To confer such an immunity, that Court has said, "would amount to inverse discrimination [because] it would enable an indigent [defendant] to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other . . ." (*Williams*, *supra*, 399 U.S. at p. 244.) By adopting an across-the-board prohibition on the very imposition of assessments and fines on indigent defendants,

13

*Dueñas* prohibits a practice that *Antazo* sanctioned (albeit under a different constitutional provision). What is more, *Dueñas* mandates the very type of "inverse discrimination" condemned by the Court in both *Bearden* and *Williams*.

Second, *Dueñas* is inconsistent with the purposes and operation of probation. The chief purpose of probation is to "'rehabilitat[e]'" and "reintegrat[e] . . . [a] [defendant] into the community." (*People v. Moran* (2016) 1 Cal.5th 398, 407; § 1202.7.) One way to achieve this purpose is to require the defendant-probationer to make an effort to repay his debt to society. This is why our Legislature has specifically empowered trial courts to "require[,] as a condition of probation[,] that [a] probationer go to work and earn money" in order "to pay any fine imposed or reparation condition." (§ 1203.1, subd. (d).) And it is why the constitutional prohibition against incarcerating a defendant for the inability to pay criminal penalties due solely to his indigence does not prohibit "revoking probation and using imprisonment as an appropriate penalty" when a probationer has "fail[ed] to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution." (*Bearden, supra*, 461 U.S. at p. 668.) *Dueñas* impedes the purpose of probation because it prohibits the imposition of any assessment, fines or fees at the outset of the probationary period and thus relieves the indigent probationer of any duty to make any effort to repay his debts and thereby rehabilitate himself. *Dueñas* is also inconsistent with the operation of probation, which typically lasts a number of years (§ 1203.1, subd. (a)) and thus gives probationers a significant period of time to repay their financial obligations—either due to their bona fide efforts or to other changes in their financial circumstances. (See *People v.*

14

*Rodriguez* (2019) 34 Cal.App.5th 641, 645 [noting how "a defendant's financial circumstances may change"]; § 1203.1b, subd. (c).) By precluding the imposition of assessments, fines and fees at the outset (and thus absolving them of any duty to pay them), *Dueñas* deprives indigent probationers of any time to repay those obligations. *Dueñas* repeatedly labels indigent defendants as "blameless" for their situation (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1168), but what label would a trial court be effectively attaching to the able-bodied, 39-year-old probationer in this case were it to refuse to impose any financial obligations on the ground that it did not believe he could pay a little over $16 per month during his three years of probation?[3]

We fully agree the fundamental policy question presented in *Dueñas* is a nettlesome one—namely, under what circumstance is it appropriate to require criminal defendants, many of whom are people of little or no means, to pay assessments that help defray the costs of operating the court system and restitution fines that pour into a statewide fund that helps crime victims? On the one hand, we appreciate the powerful sentiment behind *Griffin*'s pronouncement that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." (*Griffin*, *supra*, 351

---

[3] We calculate this amount as $580—the amount of the restitution fine plus the two assessments—divided by the 36 months of probation. We do not include the $150 drug program fee because the statute authorizing that fee permits a defendant to object to its imposition based on his inability to pay (Health & Saf. Code, § 11372.7, subd. (b)) and because defendant's failure to so object forfeited his right to object now (*Gutierrez, supra*, 35 Cal.App.5th at pp. 1032-1033).

U.S. at p. 19.) This sentiment was the genesis of language found in the dicta of other cases cited by *Dueñas* itself: *Rivera v. Orange Cnty. Prob. Dep't. (In re Rivera)* (9th Cir. 2016) 832 F.3d 1103 held that an outstanding debt to repay the costs of a child's juvenile probation was dischargeable in bankruptcy, and *People v. Neal* (2018) 29 Cal.App.5th 820 held that a trial court was required to follow the terms of a statute requiring it to consider a defendant's ability to pay a probation supervision fee; however, both *Rivera* and *Neal* went beyond *Griffin* to cite a white paper by the Brennan Center for Justice decrying how "court-imposed fees" and "punitive fines," including efforts to collect them, "can lay a debt trap for the poor" and "create[] a significant barrier for individuals seeking to rebuild their lives after a criminal conviction." (*Rivera,* at pp. 1104, 1112, fn. 7; *Neal*, at pp. 827-828.) On the other hand, prohibiting the imposition of these assessments and restitution fines puts in jeopardy the continued operation of the courts and, perhaps even more troubling, significantly undercuts the statewide Restitution Fund (§ 1202.4, subd. (e)), which in Fiscal Year 2017-2018 was able to collect $61 million in restitution fines and thereafter to distribute $57.2 million to crime victims. (California Victim Compensation Board Annual Report (2017-2018), at pp. 7, 13 <https://victims.ca.gov/docs/reports/AnnualReport-FY-17-18.pdf> [as of Sept. 2, 2019], archived at https://perma.cc/K447-MXAX.)[4]

How best to balance these competing interests—and what alternatives are best used to keep funding the courts and to continue providing some measure of restitution and solace to our

---

[4] We may take judicial notice of this publicly filed report. (Evid. Code, §§ 459, 452, subd. (c).)

16

State's crime victims—is a question to which, in our view, the federal and California Constitutions do not speak and thus have left to our Legislature. Indeed, our Legislature has already taken up this issue and is currently considering one such bill. (See Assem. Bill No. 927 (2019-2020 Reg. Sess.).) For the reasons set forth above, we conclude that due process does not speak to this issue and that *Dueñas* was wrong to conclude otherwise. (Accord, *People v. Aviles* (2019) 2019 Cal.App. Lexis 869, \*18-\*19 ["[w]e find that *Dueñas* was wrongly decided"]; *People v. Caceres* (2019) Cal.App. Lexis 860, \*15 [declining to apply *Dueñas*'s "broad holding" beyond its "unique facts"]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96-97 ["there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine and only impose the fine if it determines the defendant can afford to pay it."].)

Absent *Dueñas*, we are left to evaluate defendant's due process challenge under the two strands of precedent *Dueñas* cites. Neither strand bars the imposition of $280 in assessments and the $300 restitution fine in this case. As explained above, imposition of these financial obligations has not denied defendant access to the courts. Additionally, their imposition has yet to result in defendant's incarceration. Defendant still has 21 months of probation left to make bona fide efforts to repay these obligations. Should they remain unpaid at the end of his probationary period, the trial court will have to decide whether it was due to his indigence or to a lack of bona fide effort. At this point in time, however, due process does not deny defendant the opportunity to *try*.

17

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

18