[Crim. No. 15040. Second Dist., Div. Four. Feb. 26, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GORDON LEROY DAVIS, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philippe J. Monet, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Appellant was charged by information with driving a motor vehicle on a public highway while under the influence of a narcotic drug (Veh. Code, § 23105). After a plea of not guilty and waiver of a jury trial, the cause was submitted on the preliminary transcript and some additional testimony. Appellant was found guilty as charged, his motion for a new trial was denied, and proceedings were suspended so that a petition for civil commitment for addiction could be filed under section 3051 of the Welfare and Institutions Code. Appellant appeals from the order denying his motion for a new trial, which order was appealable under Penal Code

section 1237, subdivision 2, as it read prior to the 1968 amendments.

At 10:15 p.m. on May 17, 1967, Officer Wayne L. Greear, of the Long Beach Police Department, was on routine patrol in a marked police vehicle when he saw an automobile come to a halt at the end of a dead-end street approximately one block away. Both front doors opened, and two males alighted, leaving both doors open. Appellant left from the driver's side and walked "briskly" to the west. The other occupant went north across a vacant lot. As Officer Greear stopped his vehicle, he noticed both persons glance "furtively" at the police car and continue their rapid departure from the area. Greear's partner, Officer Brown, pursued appellant's companion, who started to run. Officer Greear went after appellant, who returned after he was told to halt. Greear testified that the hasty departure from the vehicle, coupled with the fact that the doors were left open and appellant's companion started to run, aroused his suspicion and he began to question appellant.[1]

Although the area was only dimly lit, appellant's pupils were constricted. Thinking that he might be under the influence of an opiate, the officer returned appellant to the police car and examined his eyes with a flashlight. The pupils of appellant's eyes showed virtually no reaction when the light was shone upon them. When he examined appellant's arms, the officer found several nonprofessional needle punctures, from two to ten days old. One puncture was of recent origin, possibly only three or four hours old. As the result of this, Officer Greear formed the opinion that appellant was under the influence of an opiate. It was stipulated that Officer Greear was a narcotics expert.

At the trial, the People also offered the testimony of Dr. George E. Bryant, a physician under contract to the Long Beach Police Department. He examined appellant at 11 p.m., shortly after his arrest. Although appellant told him that he had been drinking, the doctor found no alcohol on his breath. His respiration was shallow. His pupils were contracted and responded sluggishly to light and darkness. There were multiple marks over the veins of both arms, including one very fresh one. Upon the basis of these observations, the doctor concluded that appellant was under the influence of an opiate.

The People's witnesses also testified to the following facts: Officer Greear testified that, aside from the condition of his

---

[1]The legality of the arrest was not questioned in the trial court.

eyes, appellant appeared to be "normal." Aside from the haste of his departure and the furtive glances cast toward the officers, there was nothing unusual or irregular about his walk. Dr. Bryant testified that: "His face had a normal appearance. His speech was reasonably normal. He was cooperative during the examination. His coordination was pretty good. His Romberg was okay. He wasn't staggering or swaying."

There was no evidence that defendant's driving had been in any respect erratic or unusual.

Vehicle Code section 23105 provides in relevant part that: "It is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs or amphetamine or any derivative thereof to drive a vehicle upon any highway." Since there is no evidence that appellant was addicted to the use of narcotics, we are concerned solely with the "under the influence" portion of the statute.

The Supreme Court has pointed out that section 23105 is a highway safety statute, like the law against driving under the influence of liquor, and not primarily a narcotics control statute. (See *People* v. *O'Neil* (1965) 62 Cal.2d 748, 752 [44 Cal.Rptr. 320, 401 P.2d 928, 17 A.L.R.3d 806].)

Vehicle Code section 23102, which forbids driving "under the influence of intoxicating liquor," has long been interpreted to apply only to that "influence" which impairs the driver's ability to operate his vehicle properly. It is recognized that alcohol has a variety of influences upon the human body, not all of which are relevant to the person's ability to drive safely. (See *People* v. *Dingle* (1922) 56 Cal.App. 445, 448 [205 P. 705].)

In *People* v. *Haeussler* (1953) 41 Cal.2d 252, 261 [260 P.2d 8], the Supreme Court approved the statement that a person is "under the influence of intoxicating liquor" when the liquor has ". . . 'so far affected the nervous system, brain or muscles as to impair to an appreciable degree the ability to operate the vehicle in a manner like that of an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care and under like conditions.' "

In *People* v. *De La Torre* (1968) 263 Cal.App.2d 409 [69 Cal.Rptr. 654] the court reviewed the authorities and concluded that the identical standard is applicable when a violation of section 23105 is charged.

In the case at bench, the arresting officer and the examining physician testified that they were of the opinion that appel-

lant was under the influence of narcotic drugs. The Attorney General contends that this is all that is required, citing *People v. Smith* (1967) 253 Cal.App.2d 711 [61 Cal.Rptr. 557]. In that case, defendant was driving 15 miles per hour, causing eight cars to be backed up behind him. His vehicle was weaving. He was slumped over the wheel. He drove erratically. His speech was thickened. Following arrest "he became very drowsy to the point of almost passing out completely upon arrival at the narcotics division."

It was obvious even to a layman that Smith's ability to control his vehicle was seriously impaired. The only real issue in that case was whether his condition was caused by narcotics. The expert testimony of the officer was held sufficient to support a finding to that effect.

In the case at bench the defect is not lack of proof that defendant had used a narcotic, but the total lack of any evidence that defendant's ability to drive was impaired. There was neither expert opinion nor the observation of anyone that defendant lacked the alertness, judgment and coordination which are needed to operate a motor vehicle in a prudent and cautious manner.

Under the rule established in the cited authorities the conviction cannot stand.

The order denying a new trial is reversed.

Jefferson, J., and Dunn, J., concurred.