[No. D052887. Fourth Dist., Div. One. May 5, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
GERMEMIAS AGUILERA TORRES, Defendant and Appellant.

## COUNSEL

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey Koch and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McCONNELL, P. J.**—A jury convicted Germemias Aguilera Torres[1] of misdemeanor driving while under the influence of a drug (methamphetamine).[2] (Veh. Code, § 23152, subd. (a).) The trial court sentenced Torres to 120 days in jail.

Torres appeals, arguing there is insufficient evidence to establish his use of methamphetamine appreciably impaired his ability to drive safely. Alternatively, Torres argues the trial court prejudicially erred by failing to give a unanimity instruction sua sponte. In addition, Torres argues the trial court prejudicially erred by allowing the prosecutor to question an expert witness about an article on methamphetamine use and driving impairment. To the extent defense counsel may have failed to preserve the latter issue for appeal, Torres argues defense counsel provided ineffective assistance of counsel.

We agree there is insufficient evidence to support the conviction and reverse the judgment. In view of our conclusion, we do not address Torres's other arguments.

### I

*Prosecution Evidence*[3]

San Diego Police Narcotics Detective Ray Morales was surveilling a house and saw Torres drive up to it in a pickup truck. Torres went into the house for about five minutes and then returned to the truck and drove off. Morales followed the truck and radioed to other officers it was seen leaving the house.

Shortly afterwards, San Diego Police Officer Ariel Savage pulled Torres over for failing to stop the truck at the limit line of an intersection. Before initiating the traffic stop, Savage followed the truck for about a half a block. Torres did not "blow through" the intersection, he did not lock up the truck's

---

[1] Shortly before trial, Torres informed the court his true name is Germemias Torres Aguilera and he was referred to by the Aguilera surname during trial and at sentencing. In his appellate briefs, he is referred to by the Torres surname and we do the same for consistency.

[2] The jury also acquitted Torres of felony possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a).)

[3] We have omitted facts related to the drug possession charge because the jury acquitted Torres of that charge.

brakes and come to a screeching halt, and he was not involved in any near-miss accidents with other vehicles. He simply did not bring the truck to a complete stop until after half the truck had passed the limit line.

Torres cooperated with Savage during the stop; however, Savage noticed Torres was jittery, his face twitched, and he stuttered. Savage did not perform a drug recognition evaluation of Torres.

After observing the traffic stop, Morales approached Torres. Morales found Torres to be nervous and a bit agitated. Torres's demeanor fluctuated between remorsefulness, indifference, and paranoia. He was sweating profusely, his muscles were rigid, and he could not stand still. He appeared sleepy, but his eyes were wide open and watery. He also appeared unkempt, had bad breath, and had a chemical odor.

Torres was subsequently arrested and transported to the police station. When Morales questioned him about his drug use, Torres told Morales he used methamphetamine once a week and had last used it two weeks earlier. Torres then quickly revised his statement and said he had last used it two days earlier.

Morales examined Torres to determine whether he was under the influence of drugs. The examination occurred approximately one hour and 40 minutes after the traffic stop. Morales checked Torres's pulse and found it was elevated. Morales also checked Torres's pupils and found they were more dilated than normal, with signs of slow contraction (slow reaction to light) and rebound dilation (pupil resistance to constriction in light).

Although Morales has not been formally trained as a drug recognition expert, the trial court determined after an evidentiary hearing that he was qualified to testify as an expert on the recognition of a person under the influence of methamphetamine. Based on the examination and the symptoms he observed, Morales opined Torres had used methamphetamine on the day of his arrest and was in the middle of the euphoria stage when he was arrested.

During the examination, Morales obtained a urine sample from Torres. When he later received the results, he found them to be consistent with his observations of Torres's symptoms. In his opinion, the results indicated a high level of methamphetamine intoxication.

Morales testified methamphetamine intoxication can affect judgment (evidenced in driving by rapid movements, sudden stops, and sudden turns), can result in trouble focusing (evidenced by having trouble answering questions) and can cause muscle rigidity (evidenced by stiff, tight muscles). However, Morales did not conduct any field sobriety tests or other tests to measure Torres's balance, coordination, concentration, or divided attention. Although Morales has conducted such tests on persons believed to be under the influence of alcohol, he has never conducted them on a person believed to be under the influence of a drug. In addition, he has never had the opportunity to observe how methamphetamine use affects a person's ability to do multiple tasks at one time. Moreover, at the same hearing the trial court determined Morales was qualified to testify as an expert on the recognition of a person under the influence of methamphetamine, the trial court also determined he was not qualified to testify as an expert on how a person's use of methamphetamine affects a person's ability to drive.

Ola Bawardi, a toxicologist, tested Torres's urine sample and found it contained methamphetamine levels of more than 50,000 nanograms per milliliter and amphetamine levels of 16,000 nanograms per milliliter. Although she described the levels as "on the higher end," she testified urine testing does not reveal how recently the methamphetamine use occurred. She also testified urine testing does not show how "under the influence" a person is because urine testing does not show how much methamphetamine is circulating through the person's body and brain. Nonetheless, she testified most of the euphoric or stimulantlike symptoms of methamphetamine, including fidgetiness, sweating, muscle rigidity, dilated pupils, wide-open appearance of eyes, and an elevated pulse, are observed during the first 12 hours of use.

Bawardi has only seen video footage of people under the influence of methamphetamine. She has never personally witnessed anyone under the influence of the drug. In addition, she has never conducted research and is not aware of anyone else conducting research on how methamphetamine use at abuse levels affects the body. The only research of this type she is aware of involved low, therapeutic levels of the drug. She has studied literature concerning drugs and alcohol, including a 1996 article by Dr. Barry Logan on methamphetamine and driving impairment that concludes methamphetamine at any concentration is likely to produce symptoms inconsistent with safe driving. She agreed this was possible. She is also familiar with the National Highway Traffic Safety Administration's performance factsheet on methamphetamine, which states that amphetamines may affect some psychomotor

tasks and increase risk-taking at higher doses and that drug withdrawal may impair psychomotor skills required for safe driving. She agreed with these statements.

Bawardi explained that driving is a divided attention task and requires a person to focus on multiple things at once. To determine whether a person is under the influence of methamphetamine for driving purposes, Bawardi would need to see field sobriety tests such as the Romberg exam, which assesses time perception, and any other tests that assess the person's balance, coordination, ability to follow instructions, and ability to focus on multiple tasks at once.

Hypothetically, Bawardi opined that a person evaluated for methamphetamine use about one hour and 40 minutes after being stopped by police, who exhibited symptoms of watery, sleepy, wide-open eyes, a chemical smell, sweating, muscle rigidity, dilated pupils, and an elevated pulse would be exhibiting several symptoms consistent with stimulant use. These hypothetical facts combined with the results of the urinalysis would corroborate the person was under the influence of methamphetamine and the methamphetamine use occurred within 12 hours. Although she would generally expect the person to be a less safe driver, she could not opine whether the person was actually an unsafe driver without tests demonstrating altered time perception or divided attention.

She testified that dilated pupils from methamphetamine use might cause momentary blindness during driving; however, fidgetiness, sweatiness, and a high pulse rate would not make a person an unsafe driver. She further testified that failing to stop at a limit line by itself is not a sign of being under the influence. Moreover, she knew of no studies concluding methamphetamine levels of 50,000 nanograms per milliliter in a person's urine means the person is impaired for purposes of driving.

*Defense Evidence*

Torres testified he smoked methamphetamine at around 8:00 a.m. on the day of his arrest and was not feeling the effects of the methamphetamine when Savage pulled him over. He admitted he was untruthful when he told Morales he had last used methamphetamine two days before his arrest. He also admitted he had previously been convicted of two petty theft crimes.

## II

Torres contends his conviction must be reversed because there is insufficient evidence his use of methamphetamine appreciably impaired his ability

to drive. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; accord, *People v. Steele* (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225].)

■ "[T]o be guilty of *driving* while under the influence of drugs in violation of Vehicle Code section 23152, subdivision (a), ' "the . . . drug(s) must have so far affected the nervous system, the brain, or muscles [of the individual] as to impair to an appreciable degree *the ability to operate a vehicle* in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties. [Citations.]" ' [Citations.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1278 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) It is not enough that the drug could impair an individual's driving ability or that the person is under the influence to some detectible degree. Rather, the drug must actually impair the individual's driving ability. (*People v. Enriquez* (1996) 42 Cal.App.4th 661, 665–666 [49 Cal.Rptr.2d 710].)

Here, there is substantial evidence Torres was under the influence of methamphetamine when he was arrested. He admitted recent methamphetamine use, he exhibited symptoms consistent with recent methamphetamine use, and his urine tested positive for high levels of methamphetamine and its metabolite, amphetamine. There is also substantial evidence methamphetamine use can impair a person's judgment, focus, and psychomotor skills in ways that might make the person an unsafe driver. Both Morales and Bawardi offered expert testimony relevant to this point.

■ However, there is no evidence Torres's methamphetamine use actually impaired his driving ability on the night of his arrest. Both Morales and Savage observed Torres and neither testified he was driving erratically. Savage pulled over Torres for failing to stop at the limit line, a common traffic violation that Bawardi testified is not sufficient to establish a person is under the influence for driving purposes. Bawardi also testified symptoms of fidgetiness, sweatiness, and a high pulse rate do not make a person an unsafe driver. Although she testified dilated pupils from methamphetamine use might cause momentary blindness during driving, there is no evidence Torres experienced such blindness.

This case is analogous to *People v. Davis* (1969) 270 Cal.App.2d 197 [75 Cal.Rptr. 627] (*Davis*). In *Davis*, a police officer saw the defendant stop a car

at the end of a dead-end street and get out, leaving the car door open. The defendant glanced furtively at the police car and walked briskly away. The officer, a narcotics expert, contacted the defendant and noticed the defendant's pupils were constricted in dim light. The officer examined the defendant and found the defendant's pupils had little reaction to light and the defendant's arms had nonprofessional puncture wounds, some of which were very recent. A short time later, a physician examined the defendant with the same findings. The physician concluded the defendant was under the influence of an opiate. (*Id.* at p. 198.)

Nonetheless, aside from constricted eyes, the defendant appeared to be normal. There was nothing unusual or irregular about his walk, his speech was normal, he was cooperative, his coordination was good, and he did " 'okay' " on the Romberg exam. In addition, his driving had not been erratic or unusual. (*Davis, supra,* 270 Cal.App.2d at pp. 198–199.)

The trial court found him guilty of driving under the influence and he appealed. (*Davis, supra,* 270 Cal.App.2d at p. 197.) On appeal, the Attorney General argued the evidence of the defendant's intoxication was sufficient to support his conviction. (*Id.* at pp. 199–200.) The appellate court reversed, concluding there was ample evidence the defendant had used a narcotic, but no evidence, either in the form of expert opinions or firsthand observations, that the defendant lacked the alertness, judgment, and coordination necessary to operate a motor vehicle in a prudent and cautious matter. (*Id.* at p. 200.)

The Attorney General argues *Davis* is factually distinguishable because, unlike the defendant Davis who appeared to be normal, Torres exhibited numerous symptoms of methamphetamine intoxication, including pupil dilation and muscle rigidity. In addition, the Attorney General argues Bawardi linked pupil dilation to temporary blindness and such expert evidence was missing in *Davis*. Finally, the Attorney General argues no expert opinion is required to link muscle rigidity to unsafe driving and a jury could infer from this condition that Torres could not drive safely. Each of these arguments is unavailing.

As we previously explained, Bawardi linked pupil dilation to possibility of temporary blindness. There is no evidence Torres actually experienced temporary blindness. Similarly, without expert evidence correlating muscle rigidity to impaired driving or evidence that Torres was actually driving unsafely, the most the jury could infer is that Torres's muscle rigidity had the potential to affect his driving ability. The jury could not infer Torres's muscle rigidity actually affected his driving ability.

Accordingly, as in *Davis*, there is insufficient evidence to support Torres's conviction.

## DISPOSITION

The judgment is reversed.

McIntyre, J., and Aaron, J., concurred.