Filed 3/10/23  P. v. Zamora CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060978 |
| v. | (Super. Ct. No. 18NF0231) |
| GUADALUPE BERENICE ZAMORA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

Wallin & Klarich, Stephen D. Klarich for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Guadalupe Berenice Zamora drove a car into an intersection against a red light, broadsiding another car. Two passengers in the other car died; its driver was seriously injured. Zamora's blood was drawn about three hours after the collision, which revealed a blood-alcohol concentration (BAC) of .032 percent. At a jury trial, an expert opined that at the time of the collision Zamora's BAC was between .07 and .08 percent.

The jury found Zamora guilty of two counts of vehicular manslaughter while intoxicated and driving under the influence of alcohol causing great bodily injury (GBI). The trial court imposed a prison term of six years and four months.

Zamora claims: there is insufficient evidence she was driving under the influence of alcohol, the trial court failed to instruct the jury on two legal concepts, the prosecutor committed misconduct on three occasions, cumulative prejudice, and an error in the abstract of judgment. We find no errors and affirm the judgment.


I

FACTS AND PROCEDURAL BACKGROUND

On February 4, 2017, at about 2:40 a.m., Zamora was driving a grey Honda Civic approaching an intersection controlled by a traffic signal. The speed limit was 35 mph. Zamora entered the intersection at about 42 mph against a solid red traffic light. Zamora collided into a black Honda Civic as it was going through the intersection. The black car sustained significant driver's side damage; the impact pushed the car up onto a sidewalk and against a palm tree. Zamora's car sustained front area damage and spun in the intersection before coming to a stop.

An eyewitness called 911. Police and other emergency personnel quickly arrived on the scene. Four people were trapped inside the black car. People were screaming and asking for help; the driver appeared to be conscious but was unable to communicate. The fire department cut off the roof to get to the trapped occupants.

2

Zamora and her passenger, Jasmine N., were standing outside of the grey car when the police arrived. Jasmine told police she and Zamora had both been drinking "several" Stella Artois beers at a friend's house in Santa Ana about three to four hours prior to driving. Jasmine said Zamora's grey car entered the intersection when the light was green. Jasmine told police she saw the black car out of the corner of her eye and by the time she saw "it, they had collided." Jasmine said the black car ran the red light.

Detective Dylan Cook spoke to Zamora. The first thing Zamora said was the other driver had "ran the red." Zamora had an odor of alcohol emitting from her breath and had bloodshot, watery eyes. Zamora's speech was slow. Cook administered five field sobriety tests (FSTs) in which Zamora exhibited signs of alcohol impairment. Zamora blew into a preliminary alcohol screening (PAS) device. The PAS device displayed a BAC of .05 percent at 3:42 a.m., and a BAC of .05 percent at 3:45 a.m.

Officer Jesse Amend interviewed Zamora at the police station. Zamora said she had been at a restaurant/bar prior to the collision where she had one drink from 9:00 p.m. to about 10:00 p.m., which she described as a "strawberry tart" in a fancy cup. Zamora stated she left the restaurant/bar at about 2:30 a.m. Zamora said she was probably driving 35 or 36 mph at the time of the collision. Zamora stated, "from afar the light was red, and by the time she got there, it had been green for two to three seconds." Zamora said the other driver "was a very old man." Zamora's blood was drawn at 5:31 a.m., which later revealed a BAC of .032 percent.

The driver of the black car was taken to the hospital. The driver had a broken clavicle, damage to his rib cage, and had to have his spleen removed. The driver's wife was in the front passenger seat; the driver's mother and sister-in-law were in the backseat. Both rear passengers died due to multiple blunt force traumatic injuries.

Officer Amend later removed an electronic data recorder (EDR) from Zamora's car. While inside the car, Amend removed some of Zamora's personal

3

belongings at her request. Amend saw three shot glasses within the car; one was on the backseat floorboard, two were on the front passenger floorboard. When Zamora picked up her belongings, she saw a list of the inventoried items. Zamora spontaneously said, "the shot glasses were used to feed her dog food and water."

*Court Proceedings*

The prosecution called 14 witnesses during a six-day jury trial. The prosecution introduced video evidence showing Zamora had run "a stale red light," meaning it had been red "a considerable amount of time" before Zamora entered the intersection. A transportation engineer testified there is a system that prevents green lights from displaying in both directions at the same time. The EDR revealed Zamora was driving about 42 mph at the time of the impact. A vehicle collision investigator opined that if Zamora's car been travelling at the designated speed limit (35 mph) the two cars would have missed each other and the collision would not have occurred.

Jasmine testified she could not recall the color of the traffic light at the time of the collision. Jasmine said she drank one beer at her friend's house before going out with Zamora. Jasmine testified she did not see Zamora have any drinks at the friend's house, and she saw Zamora drink one drink at the bar afterwards. Jasmine did not recall telling police about her and Zamora drinking beers, or about the black car running the red light. Jasmine testified Zamora uses shot glasses to feed her dog.

Forensic scientist Valera Horton testified about how alcohol affects driving abilities and how it is absorbed into the human body. Horton said crash risk studies "show that an individual starts to have a higher risk of being involved in traffic collisions and fatal traffic collisions as their blood alcohol concentration increases. Around a .05 to a .08 is where we start seeing, not just a one-to-one increase, but we start seeing exponential increases." In a hypothetical question, Horton opined if a person's BAC

4

measured .05 percent at 3:45 a.m. (the PAS test), and .032 percent at 5:31 a.m. (the chemical blood test), that would mean that at 2:40 a.m. (the time of the collision) the BAC was between .07 percent and .08 percent.

The jury found Zamora guilty of two counts of vehicular manslaughter with ordinary negligence while intoxicated and driving under the influence of alcohol with injury (count three). The jury found true a GBI enhancement as to count three. The trial court imposed a prison sentence of six years and four months.

II

DISCUSSION

Zamora raises various claims of error on appeal: A) insufficient evidence; B) the court failed to instruct the jury on two legal concepts; C) the prosecutor committed misconduct three times; D) cumulative prejudice; and E) an error in the abstract of judgment. We shall analyze each claim.

A. *Sufficiency of the Evidence*

Zamora claims there is insufficient evidence she was driving under the influence of alcohol (an element of all three convictions). We disagree.

In a sufficiency of the evidence review, an appellate court looks at "'the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We must presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

A person is under the influence of alcohol, when, because of consuming alcohol, "'his [or her] physical or mental abilities are impaired to such a degree that he [or she] no longer has the ability to drive his [or her] vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances.'" (*People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1354-1355.) "It is not enough that the [alcohol] could impair an individual's driving ability or that the person is under the influence to some detectible degree. Rather, the [alcohol] must actually impair the individual's driving ability." (*People v. Torres* (2009) 173 Cal.App.4th 977, 983; *People v. Canty* (2004) 32 Cal.4th 1266, 1279 ["The gravamen of driving while under the influence is *driving* despite an impairment of capacity"].)

"If the issue is whether the ability of the driver to operate his vehicle is impaired, the manner in which the vehicle is driven is evidence which tends to prove or disprove that fact. The guilt of an accused may be established by circumstantial as well as by direct evidence, and the right to draw proper inferences from the evidence is a function of the jury." (*People v. Weathington* (1991) 231 Cal.App.3d 69, 83.)

Zamora exceeded the speed limit and did not stop at a solid red traffic light as she approached an intersection. As a result, she violently struck a car within the intersection, killing two of its passengers and seriously injuring the driver. Detective Cook testified when he first encountered Zamora, she had the odor of alcohol on her breath, spoke slowly, and had red-watery eyes. Forensic scientist Horton testified these are objective signs Zamora may have been under the influence of alcohol.

Within an hour after the collision, Cook administered three FSTs validated by the National Highway Traffic Safety Administration: the Horizontal Gaze Nystagmus (HGN) Test, the one-leg stand, and the walk-and-turn test. Cook also administered two additional FSTs: the finger-to-nose test and modified Romberg test. Cook testified FSTs are designed, in part, to determine if a person can follow directions and utilize divided

6

attention skills, which are the same types of skills needed to drive safely. Cook testified the results on each of the five FSTs were consistent with Zamora being impaired due to consuming alcohol.

Forensic scientist Horton testified a person with a .05 percent BAC about an hour after driving (the PAS test) and a .032 percent BAC about three hours after driving (the blood test), would have had a BAC of between .07 and .08 percent while driving. Horton opined, "most individuals are impaired for the purposes of driving if their blood alcohol concentration is between a .05 and a .08 [percent]." [1]

Horton further testified that in order to have a BAC of .032 percent at 5:31 a.m., that person would have had to have consumed between four and five standard drinks if they were drinking from 9:00 to 10:00 p.m. This evidence, along with Jasmine's statements immediately after the collision about Zamora's alcohol consumption, tends to show Zamora lied to the police about her alcohol consumption. (See CALCRIM No. 362 "[If [the] defendant . . . made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show (she) was aware of (her) guilt"].)

In short, we find substantial evidence in the record to support the jury's determination Zamora was driving under the influence of alcohol—she was unable to drive with the caution characteristic of a sober person—at the time of the collision.

Zamora argues Detective Cook admitted during cross-examination he failed to administer some aspects of the FSTs properly and the balance of the evidence is insufficient to support her convictions. We disagree.

Cook admitted he failed to turn Zamora away from nearby patrol car lights

---

[1] Zamora was charged with and convicted of the "generic" offense of driving under the influence of alcohol with injury (Veh. Code, § 23153, subd. (a)), as opposed to the "per se" offense of driving with a BAC of.08 percent or greater with injury (Veh. Code, § 23153, subd. (b)). Further undesignated references are to the Vehicle Code.

during some of the FSTs, and he did not properly instruct her on how to execute the turn during the walk-and-turn test. However, Cook testified Zamora was not distracted by the lights, and she displayed other signs of impairment irrespective of the turn: failing to maintain her start position, missing touching her feel to toe, using her arms for balance, taking an incorrect number of steps, etc. In any event, these are factual issues we must leave for the jury to resolve. (See *In re I.J.* (2013) 56 Cal.4th 766, 773 [a reviewing court does not reweigh the evidence, but rather determines whether substantial evidence supports the jury's verdict].)

Moreover, the remainder of the evidence is sufficient to support the jury's conclusion Zamora was driving under the influence of alcohol at the time of the collision (the traffic code violations, the objective symptoms of alcohol impairment, her statements to the police regarding her alcohol consumption, Jasmine's contradictory statements, the PAS and blood tests, the forensic scientist's expert testimony, etc.). (See *In re Frederick G.* (1979) 96 Cal.App.3d 353, 366 ["The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence"].)

### B. Jury Instructions

Zamora claims the trial court failed to instruct the jury on its own motion regarding two legal concepts: statutory presumptions about BAC levels; and whether the police properly followed statutory regulations regarding the PAS test. (See § 23610, subd. (a); Cal. Code of Regs., tit. 17, § 1219, et seq. (Title 17).)

We review instructional error claims under a de novo standard of review. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.) "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

In this part of the discussion, we will: 1) review relevant principles of law;

8

2) analyze the alleged instructional error as to BAC levels; and 3) analyze the alleged instructional error as to Title 17 regulations about the PAS test.

### 1. Relevant Principles of Law

A trial court must instruct a jury sua sponte on all "'""general principles of law relevant to the issues raised by the evidence."'"" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "By contrast, '"pinpoint"' instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte.'" (*People v. Hill* (2015) 236 Cal.App.4th 1100, 1118-1119.)

"In criminal cases, the trial court must instruct sua sponte on the general principles of law relevant to issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the evidence which are necessary for the jury's proper consideration of the case. At a minimum, the court must ensure that the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination in conformity with applicable law." (*People v. Owen* (1991) 226 Cal.App.3d 996, 1004.)

The sua sponte "rule is designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of inept counsel . . . . However, the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. [Citation.] Thus, the court is required to instruct sua sponte only on general principles which are necessary for the jury's understanding of the case. It need not instruct on specific points or special theories *which might be applicable to a particular case*, absent a request for such an instruction." (*Owen*, *supra*, 226 Cal.App.3d at pp. 1003-1005,

9

italics added [trial court did not have sua sponte duty to instruct on presumption that a resident was in reasonable fear of his safety under the Home Protection Bill of Rights].)

### 2. Statutory Presumptions (BAC Levels)

Zamora argues the trial court erred by failing to instruct the jury sua sponte on statutory presumptions about BAC levels. We disagree.

There are three statutory presumptions regarding BAC percentages when a person is charged with the "generic" offense of driving under the influence of alcohol. The first presumption operates against the prosecution, the second is neutral, and the third operates against the defendant. (§ 23610, subd. (a)(1)-(3).)

"Upon the trial of any criminal action . . . arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of an alcoholic beverage . . . , the amount of alcohol in the person's blood *at the time of the test* as shown by chemical analysis of that person's blood, breath, or urine shall give rise to the following presumptions affecting the burden of proof:

"(1) If there was *at that time* [(the time of the test)] less than 0.05 percent, by weight, of alcohol in the person's blood, it shall be presumed that the person was not under the influence of an alcoholic beverage *at the time of the alleged offense*.

"(2) If there was *at that time* [(the time of the test)] 0.05 percent or more but less than 0.08 percent, by weight, of alcohol in the person's blood, that fact shall not give rise to any presumption that the person was or was not under the influence of an alcoholic beverage, but the fact may be considered with other competent evidence in determining whether the person was under the influence of an alcoholic beverage *at the time of the alleged offense*.

"(3) If there was *at that time* [(the time of the test)] 0.08 percent or more, by weight, of alcohol in the person's blood, it shall be presumed that the person was

10

under the influence of an alcoholic beverage *at the time of the alleged offense*."
(§ 23610, subd. (a), italics added.)

"This section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the person ingested any alcoholic beverage or was under the influence of an alcoholic beverage at the time of the alleged offense." (§ 23610, subd. (c).)

Section 23610 creates rebuttable presumptions rather than mandatory presumptions. (*People v. Gallardo* (1994) 22 Cal.App.4th 489, 497.) Section 23610, subdivision (c), allows for evidence contrary to the presumptions, and subdivision (a) "contains no time frame within which the blood-alcohol test is to be taken for purposes of its presumptions. Accordingly, its presumptions must logically be deemed rebuttable."[2] (*Gallardo*, at p. 497.)

"Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (Evid. Code, § 601.) "The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.)

Our Supreme Court has held a jury instruction phrased as a rebuttable presumption that operates against a defendant effectively creates an unconstitutional mandatory presumption. (*People v. Roder* (1983) 33 Cal.3d 491, 497-505.) Accordingly, the applicable bracketed portion of the pattern criminal jury instruction that operates against the defendant has been written as a permissive inference: "[If the People have proved beyond a reasonable doubt that the defendant's blood alcohol level was 0.08

---

[2] When a "per se" driving violation is alleged, "it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test *within three hours after driving*." (§ 23153, subd. (b), italics added.)

11

percent or more at the time of the chemical analysis, you may, but are not required to, conclude that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense.]" (CALCRIM No. 2100.)

A trial court should not give the above bracketed portion of the pattern jury instruction if there is no evidence the defendant's BAC was at or above .08 percent at the time of the test. (*People v. Wood* (1989) 207 Cal.App.3d Supp. 11, 15 ["'It is error to give an instruction which correctly states a principle of law which has no application to the facts of the case'"].) There is no bracketed portion of CALCRIM No. 2100 (or any other pattern jury instruction) that references the presumption that operates against the prosecution (BAC of less than .05 percent) or the neutral presumption (BAC of from .05 to less than .08 percent). (See § 23610, subd. (a)(1), (2); see also CALCRIM No. 2100.)

We hold when a defendant is charged with a "generic" offense of driving under the influence of alcohol, he or she may be entitled to a jury instruction about the presumption that operates against the prosecution (§ 23610, subd. (a)(1)), or the neutral presumption (§ 23610, subd. (a)(2)). However, a trial court does not have a sua sponte duty to so instruct the jury because the presumptions are specific points of law that may or may not apply, depending on the facts in a particular case. (See *Owen*, *supra*, 226 Cal.App.3d at p. 1005 [a court "need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction"]; see also Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2015) § 55.39, p. 1945 [in alcohol-related crimes, both parties have the responsibility to "fashion their own

12

instructions when the trial presents issues not covered by the standard instructions"].)[3]

Accordingly, we hold the trial court did not commit instructional error in this case because it was under no obligation to instruct the jury regarding the presumptions under section 23610 without request. In the alternative, Zamora argues her trial counsel was ineffective for failing to request a pinpoint instruction. We disagree.

To establish an ineffective assistance of counsel claim, a defendant must show: 1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) this resulted in prejudice to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 (*Strickland*).) "A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." (*Id*. at p. 670.)

The standard for analyzing prejudice in an ineffective assistance of counsel claim mirrors the state standard for prejudicial error. (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050-1051.) That is, "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) "Reviewing courts will scrutinize with great care any claim of prejudicial error predicated solely upon the omission of the trial court to

---

[3] The Attorney General agrees with Zamora that the trial court had a sua sponte duty to instruct the jury on the presumptions within section 23610. However, the Attorney General argues the purported instructional error was not prejudicial under either state or federal standards. As to the issue of whether the trial court had a sua sponte duty to instruct the jury on section 23610, we respectfully disagree with the Attorney General's concession. (See *People v. Kim* (2011) 193 Cal.App.4th 836, 847 [an appellate court is not required to accept a concession by the Attorney General].)

13

give of its own motion an instruction, the propriety of which is indicated solely by the condition of the evidence.  Prejudicial error will be held to exist if, upon an examination of the entire record [citations], it appears that the giving of the instructions was vital to a proper disposition of the case."  (*People v. Davis* (1954) 43 Cal.2d 661, 674.)

Here, we need not analyze whether defense counsel's performance fell below an objective standard of reasonableness because we do not find sufficient prejudice.  (*Strickland*, *supra*, 466 U.S. at p. 670.)  That is, we do not think there is a reasonable probability the jury would have reached a more favorable result had the court given a pinpoint instruction regarding the statutory presumptions under section 23610.

Zamora's chemical blood test revealed a BAC of .032 percent; therefore, a requested pinpoint instruction likely would have informed the jurors:  If the People have proved beyond a reasonable doubt the defendant's blood-alcohol level was less than 0.05 percent *at the time of the chemical analysis*, you may, but are not required to, conclude the defendant was not under the influence of an alcoholic beverage *at the time of the alleged offense*.  (See § 23610, subd. (a)(1).)

However, in every criminal case a trial court is required to instruct the jury:  "A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt."  (CALCRIM No. 220.)  Given that the court properly instructed the jury Zamora was presumed innocent (i.e., the jurors were to presume Zamora was not driving under the influence of alcohol at the time of the alleged offenses), we find the additional pinpoint instruction would not have been "vital to a proper disposition of the case."  (See *People v. Davis*, *supra*, 43 Cal.2d at p. 674; *People v. Goodman* (1970) 8 Cal.App.3d 705, 709 ["we believe the error is not of reversible dimensions in view of other instructions given"].)

Further, the jury would have also likely been instructed that the presumptions under section 23610 "shall not be construed as limiting the introduction of

any other competent evidence bearing upon the question of whether the person . . . was under the influence of an alcoholic beverage at the time of the alleged offense." (§ 23610, subd. (c).)  Here, as we discussed earlier, there was substantial competent evidence bearing on the question of whether Zamora was impaired at the time of the collision, which would have tended to rebut the rebuttal presumption (e.g., Zamora's running of the solid red traffic light and her speeding through the intersection, her objective symptoms of impairment, her statements to the police regarding her alcohol consumption, her poor performance on the FSTs, Jasmine's statements to the police regarding Zamora's alcohol consumption, the evidence regarding the shot glasses, etc.).

Moreover, the forensic scientist explained to the jury how the absorption of alcohol would have accounted for Zamora's reduced BAC at the time of the PAS and blood tests.  Horton opined a BAC of .05 percent about an hour after the collision (the PAS test) and a .032 percent about three hours after the collision (the blood test) would mean Zamora's BAC was between .07 percent and .08 percent at the time of the collision. Horton also testified, "most individuals are impaired for purposes of driving if their blood alcohol concentration is between a .05 and a .08 [percent]."

In sum, we find Zamora was not prejudiced by her trial counsel's failure to request a pinpoint instruction concerning BAC presumptions under section 23610.

### 3. Statutory Regulations (Title 17)

Zamora argues the trial court erred by failing to instruct the jury sua sponte regarding Title 17 regulations concerning the PAS test.  We disagree.

"A California peace officer may not lawfully use [PAS test] devices which determine the concentration of ethyl alcohol in the subject's blood prior to the subject's arrest unless the equipment and procedures used comply with the regulations of the State Department of Health Services [Title 17]."  (72 Ops.Cal.Atty.Gen. 226 (1989).)

15

If there is evidence the peace officer failed to follow Title 17 regulations, then the trial court must give the bracketed portion of the pattern jury instruction that reads: "[In evaluating any test results in this case, you may consider whether or not the person administering the test or the agency maintaining the testing device followed the regulations of the California Department of Public Health]." (See CALCRIM No. 2100; see also *People v. Williams* (2002) 28 Cal.4th 408, 414 ["Noncompliance goes only to the weight of the evidence, not its admissibility"].)

Here, there was no evidence Detective Cook failed to follow Title 17 regulations concerning the PAS test device. Thus, we find the trial court was not required to give the relevant bracketed portion of the CALCRIM No. 2100 instruction.

Zamora argues Cook admitted administering some aspects of the FSTs improperly, and therefore the trial court had a sua sponte obligation to instruct the jury about Title 17 regulations. But Zamora has not alleged the FSTs are regulated by Title 17, and the FSTs are plainly distinct from the PAS breath test. Therefore, Zamora's argument does not affect our analysis. To reiterate, we find no instructional errors.

## C. Prosecutorial Misconduct

Zamora argues the prosecutor committed prosecutorial misconduct at three points during the trial. We disagree.

We evaluate claims of prosecutorial misconduct/error under well-established standards. "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

16

"'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.'" (*People v. Hill* (1998) 17 Cal.4th 800, 819-820.) However, "'the term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

In reviewing a prosecutor's comments to the jury, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.) Generally, a prosecutor has "'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*Ibid.*) The relevant question is "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of-remarks in an objectionable fashion.'" (*Id.* at pp. 1202-1203.)

Generally, in order to raise an alleged error on appeal, the issue must have first been raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2.) Specifically, a defendant forfeits a prosecutorial misconduct claim on appeal unless the defendant objected to the alleged misconduct when it occurred, and further asked the court to admonish the jury. (See *People v. Ervine* (2009) 47 Cal.4th 745, 806 (*Ervine*).)

Zamora claims the prosecutor committed misconduct: 1) during a redirect examination in a comment critical of defense counsel; 2) during closing argument in a comment critical of defense counsel; and 3) during closing argument in a comment about Zamora's speeding. We shall analyze each claim.

### 1. Comment During Redirect About Defense Counsel

Detective Cook admitted during his cross-examination by defense counsel

17

that he had not turned Zamora away from the nearby flashing emergency vehicle lights while administering the FSTs. Defense counsel then asked Cook, "So if you're giving that walk and turn test to somebody staring at or looking at or facing flashing lights that are of high intensity in the dark, it might affect their ability to balance. Would you agree?" Cook responded, "Yes."

During the redirect examination, the prosecutor asked Cook, "*Defense counsel led you down a very rosy path*, asked you about the lights, and do you remember him talking about how the lights make people off balance, et cetera?" (Italics added.) Cook responded, "Yes." After showing a video of the scene to the jury, the prosecutor asked, "Okay. Did you see a bunch of these firefighters? Were they all falling over and passing out?" Cook responded, "No."

On appeal, Zamora argues the prosecutor "chose to disparage defense counsel by averring that defense counsel had led Mr. Cook 'down a rosy path.' This, we submit, was a clear attempt to influence the jury in an improper manner."

Zamora did not object to the purported prosecutorial misconduct at trial, nor did she request an admonition, so this issue has been forfeited for purposes of appeal. (See *Ervine*, *supra*, 47 Cal.4th at p. 806.) In any event, we find the prosecutor's "rosy path" comment to be relatively innocuous and it "does not amount to a personal attack on counsel's integrity." (See *People v. Medina* (1995) 11 Cal.4th 694, 759.) Rather, the "rosy path" comment appears to be a somewhat colorful phrase intended to emphasize the prosecutor's interpretation of the evidence. That is, the surrounding lights had no effect on Zamora's poor performance during the FSTs.

### 2. Comment During Closing About Defense Counsel

During closing argument, the prosecutor said to the jurors, "You are the ones that are going to judge how much weight to give officer Cook's testimony. He went

18

up against a very seasoned defense attorney who, had he spent five more minutes with him on the stand, he probably could have gotten him to admit to being the second gunman on the grassy knoll or to committing some other crazy crime, because it was literally yes, yes, yes, yes, yes, yes, yes." The prosecutor continued, "It is up to you to decide [Cook's] credibility. He said he smelled the odor of alcohol. We have proof there was alcohol in her system. He saw objective signs of impairment." The prosecutor acknowledged Cook "didn't instruct properly on some of the field sobriety tests." The prosecutor said the forensic scientist gave "her opinion on whether [the FSTs] are valid or not. At the end of the day, it's up to you, and that's why you're here."

On appeal, Zamora argues that by making the "grassy knoll" allusion to President Kennedy's assassination, "the prosecutor here was arguing that defense counsel was effective at getting the witness to admit to things that were not true."

Once again, Zamora did not raise this objection at trial, so it has been forfeited on appeal. (See *Ervine*, *supra*, 47 Cal.4th at p. 806.) In any event, we do not interpret the prosecutor's "grassy knoll" comment as "a personal attack on counsel's integrity." (See *People v. Medina*, *supra*, 11 Cal.4th at p. 759.) Indeed, when we consider the "grassy knoll" comment in context, it appears to be a somewhat backhanded compliment as to the defense attorney's cross-examination skills. The prosecutor then quickly pivoted back to discussing the evidence during the trial.

### 3. *Comment During Closing About Zamora's Speeding*

During closing argument, the prosecutor argued that had Zamora "been going the speed limit, had she been going the posted 35, like she should have been, she would have stopped at around the one second mark from the EDR analysis that [the vehicle collision investigator] analyzed. This crash wouldn't have even happened. She would have lucked out. The victims would still be alive."

19

On appeal, Zamora argues: "We submit that this argument is not probative on the issue of negligence – whether ordinary or gross. After all, had Appellant been traveling at 100 m.p.h. she would not have arrived at the intersection at the same time as [the victim's] car either. . . . It is respectfully submitted that this argument was deceptive and that it attempted to show the jury that there was negligence in this area where the issue simply was not probative of that question."

Once again, this argument has been forfeited. (See *Ervine*, *supra*, 47 Cal.4th at p. 806.) In any event, the prosecutor's comment did not remotely constitute misconduct as it simply restated the evidence admitted during the trial. (*People v. Mendoza* (2000) 24 Cal.4th 130, 172 ["A prosecutor's argument may properly be based on evidence"].) Zamora appears to be arguing the expert witness's testimony was faulty or irrelevant; however, there was no objection made during the trial.

In sum, we reject each of Zamora's claims of prosecutorial misconduct.

*D. Cumulative Prejudice*

Zamora contends the cumulative prejudice of the alleged foregoing alleged errors compels reversal of her convictions. We disagree.

"In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself." (*In re Reno* (2012) 55 Cal.4th 428, 483, superseded by statute on other grounds as stated in *In re Friend* (2021) 11 Cal.5th 720, 728.) However, the rejection of each of a defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate." (*In re Reno*, at p. 483.)

Here, we found Zamora was not prejudiced by counsel's failure to request a pinpoint instruction and we found no other prejudicial errors. Therefore, there is no prejudice to aggregate and/or analyze.

## E.  Abstract of Judgment

Zamora claims the trial court erred by designating the two manslaughter convictions as serious felonies within the abstract of judgment.  (See Pen. Code, §§ 191.5, subd (b), 1192.7, subd. (c).)  We disagree.

Penal Code section 1192.7, subdivision (c), designates several felonies as "serious."  Vehicular manslaughter is not a named serious felony.  (Pen. Code, § 191.5, subd. (c).)  However, the statute describes other categories of felonies as serious, including "*any other felony* in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ."  (Pen. Code, § 1192.7, subd. (c)(8), italics added.)  Further, a related statute clarifies "any violation of Section 191.5" is a "'serious felony'" if the crime "involve[s] the personal infliction of great bodily injury on any person other than an accomplice."  (Pen. Code, § 1192.8, subd. (a).)

Although the jury did not find true a GBI allegation as to the two deceased victims, that is of no consequence.  (See Pen. Code, § 12022.7, subd. (a).)  "Great bodily injury is by definition inherent in a murder or manslaughter victim's injuries that result in death.  Consequently, great bodily injury is necessarily proven when the victim's death is proven as an element of those offenses."  (*People v. Cook* (2015) 60 Cal.4th 922, 933.)

Here, a jury found Zamora guilty of driving under the influence of alcohol causing injury with a GBI allegation, and two counts of vehicular manslaughter with ordinary negligence while intoxicated.  The two homicide crimes necessarily involve the personal infliction of GBI (the victims' deaths).  (See *People v. Cook*, *supra*, 60 Cal.4th at p. 933.)  Thus, we find the trial court properly designated all three convictions as serious felonies within the abstract of judgment (on this point, we again respectfully disagree with the Attorney General's concession).

21

### III

### DISPOSITION

The judgment is affirmed.


                                        MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.